# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | |
|---|---|
| BRIGID CAPPELLETTI and SCOTT CHESLA,<br><br>    Plaintiffs,<br><br>    v.<br><br>GEORGIA DEPARTMENT OF COMMUNITY AFFAIRS (DCA), CHRISTOPHER NUNN, in his official capacity as Commissioner of DCA, WESLEY BROOKS, in his official capacity as Deputy Commissioner of Homeownership for DCA, GOVERNOR'S OFFICE OF PLANNING AND BUDGET (OPB), RICHARD DUNN, in his official capacity as Director of OPB, and TREY BENNETT, in his official capacity as Director of the Grants Division and General Counsel of OPB,<br><br>    Defendants. | 5:25-CV-009 |

## ORDER

Before the Court is Defendants' collective motion to transfer venue. Dkt. No. 20. The motion has been fully briefed, dkt. nos. 20, 34, 39, and is ripe for review.

### BACKGROUND

This civil rights putative class action arises from Defendants' administration of the Georgia Mortgage Assistance program, which provides monetary relief from federal grants to

Georgia homeowners who suffered financial hardships due to COVID-19.  See Dkt. No. 1 at 2.  In short, Plaintiffs allege that Defendants discriminated against them and other white homeowners in favor of homeowners from Defendants' preferred racial groups: Black Americans, Hispanic Americans, Native Americans, Asian Americans, and Pacific Islanders.  Id. at 2, 4.  Defendants include the Georgia Department of Community Affairs ("DCA"), a state agency which developed and administers the Georgia Mortgage Assistance Program, id. at 6; Christopher Nunn, DCA's Commissioner, id.; Wesley Brooks, DCA's Deputy Commissioner of Homeownership, id.; the Governor's Office of Planning and Budget ("OPB"), which oversees the development, marketing and administration of the Georgia Mortgage Assistance program, including the distribution of federal funds, id. at 6-7; Richard Dunn, OPB's Director, id. at 7; and Trey Bennett, OPB's General Counsel and Director of the Grants Division, id.

Plaintiffs filed suit in this Court, located in the Southern District of Georgia, Waycross Division, on January 30, 2025.  See id.  Plaintiffs bring against Defendants claims for damages and declaratory and injunctive relief under Title VI of the Civil Rights Act and the Equal Protection Clause.  Id. at 5.

In the complaint, Plaintiffs base federal subject matter jurisdiction on the existence of a federal question.  Id. at 5 (citing 28 U.S.C. §§ 1331, 1343).  Plaintiffs also aver in the

2

complaint that venue is proper in this Court because "at least one Defendant is a resident of this District and all Defendants are residents of Georgia, and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District." Id. (citing 28 U.S.C. § 1391(b)).

Defendants now move to transfer venue of this action from the Southern District of Georgia, Waycross Division, to the Northern District of Georgia, Atlanta Division. Dkt. No. 20 at 1. Plaintiffs oppose the motion. Dkt. No. 34.

## LEGAL AUTHORITY

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. See 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

When considering a motion to transfer venue, the following factors are to be considered:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and

    (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Kelling v. Hartford Life & Accident Ins. Co., 961 F. Supp. 2d 1216, 1218 (M.D. Fla. 2013) (quoting Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quoting Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. Unit B 1981)).

    Finally, it is the movant's burden to establish that a case should be transferred to the suggested forum in the interests of convenience and justice. See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) ("[T]he burden is on the movant to establish that the suggested forum is more convenient.")

## DISCUSSION

    Defendants move pursuant to 28 U.S.C. § 1404(a) to transfer this case from the United States District Court for the Southern District of Georgia, Waycross Division, to the United States District Court for the Northern District of Georgia, Atlanta Division. Dkt. No. 20 at 1. Defendants point out that "[t]he main offices for DCA and OPB are located in Atlanta, Georgia, and the individual defendants work in Atlanta, Georgia." Id. at 2. In response, Plaintiffs argue this action seeks statewide relief and their choice of forum is entitled to significant deference. Dkt. No. 34 at 3.

I.  **The Transferee Forum**

Before analyzing the convenience factors of § 1404(a), the Court must first determine whether Plaintiffs could have brought this action in the Northern District of Georgia, Atlanta Division. "An action 'might have been brought' in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." Windmere Corp. v. Remington Prods., Inc., 617 F. Supp. 8, 10 (S.D. Fla. May 31, 1985) (citing 15 C. Wright, A Miller & E. Cooper, Fed. Prac. & Proc. § 3845 (1976)).  First, the Northern District of Georgia, just like this Court, has subject matter jurisdiction over this case because it involves questions of federal law.  Second, venue is proper in the Northern District of Georgia because Defendants reside there.  28 U.S.C. § 1391(b)(1); Dkt. No. 20 at 3.  Finally, Defendants are amenable to service of process in the Northern District of Georgia because DCA and OPB's main offices, where the individual Defendants work, are located in Atlanta.  Dkt. No. 20 at 2.  Notably, the Parties do not dispute that this action could have been brought in the Northern District of Georgia's Atlanta Division.  See Dkt. No. 20; Dkt. No. 34 at 2-3.  The Court easily concludes this action could have been brought in the Northern District of Georgia, Atlanta Division, and will now evaluate the

applicable § 1404(a) factors to determine whether transfer of venue is appropriate.

**II.   Convenience Factors**

   **A. Locus of Operative Facts**

"In determining the locus of operative facts, the court must look at 'the site of events from which the claim arises.'" Gubarev v. Buzzfeed, Inc., 253 F. Supp. 3d 1149 (S.D. Fla. 2017) (quoting Nat'l Trust Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co., 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016)).  Here, Defendants argue "the forum most impacted by the alleged misconduct . . . is the Northern District, Atlanta Division." Dkt. No. 20 at 4.  Defendants concede that "some of the individuals who received funds from the program lived in Waycross," but they argue "all of the work was done out of the Atlanta office."  Id.   Plaintiffs counter that "[t]he operative facts include not only the policy's origin but also its statewide implementation and effects, which impacted homeowners across Georgia, including in the Southern District."  Dkt. No. 34 at 8.

To support their arguments, both parties cite Combs v. Florida Department of Corrections, 461 F. Supp. 3d 1203 (N.D. Fla. 2020). There, the plaintiff brought suit against the Florida Department of Corrections and others for injuries he suffered as a result of the defendants' creation and implementation of a statewide policy that resulted in withholding medical treatment for HCV-positive

inmates.  Id. at 1212.  The Court noted that "[w]hen enactment of a policy is the '*actus reus*' element of a constitutional or statutory tort, the location where the policy was promulgated clearly would be the locus of the operative facts."  Id.  However, the court also noted that the alleged constitutional and statutory tort—lack of necessary medical care—took place where application of the policy to the plaintiff occurred, that is, where he was incarcerated.  Id.  The court ultimately found multiple loci of operative facts and designated this factor neutral in the § 1404(a) analysis.  However, the court noted that "[w]hen there are multiple loci of operative facts, a court should attempt to determine if there is one primary locus with the strongest connection to the operative facts."  Id.

Here, it is clear that the Northern District is the locus of operative facts because the Georgia Mortgage Assistance program was created and administered there.  Dkt. No. 20 at 4.  Further, the named Plaintiffs lived in the Northern District at the time of their application for mortgage assistance.  Id. at 3.  At this point in the litigation, it is not clear from the record precisely where members of the proposed class felt the alleged discriminatory effects of the program's application, but Plaintiffs contend the alleged discrimination is statewide and not distinctly tied to one district.  Dkt. No. 34 at 8.  Based on this information, the Court concludes there are multiple loci of operative facts.  However,

7

the Court also concludes that the primary locus with the strongest connection to the operative facts is the Northern District of Georgia, because the challenged program was created and administered there *and* the program's alleged discriminatory effects were felt there. This factor therefore weighs in favor of transfer.

### B. Plaintiffs' Choice of Forum

The general rule is that a plaintiff has the right to choose the forum in which to pursue a case. "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). However, a plaintiff's choice of forum is "accorded little weight" where the plaintiff resides outside of the forum. See Larison v. Atl. Coast Bank, No. CV415-184, 2016 WL 1572965, at *3 (S.D. Ga. Apr. 15, 2016). Too, "the choice of forum is afforded little weight if the majority of the operative events occurred elsewhere." Bell v. Rosen, No. CV214-127, 2015 WL 5595806, at *13 (S.D. Ga. Sept. 22, 2015). "In those instances, no party is particularly inconvenienced by a transfer." Id. (internal quotations and citation omitted).

Defendants argue this forum has little relationship to the operative facts and therefore Plaintiffs' choice of forum should be afforded less weight. Dkt. No. 20 at 5. Further, Defendants

contend Plaintiffs reside in the Northern District of Georgia and would not be burdened by a transfer of venue. Dkt. No. 39 at 4.

Plaintiffs, in a calculated fashion, do not reveal where they reside. Too, Plaintiffs do not dispute Defendants' contention that Plaintiffs reside in the Northern District of Georgia. The Court therefore concludes that Plaintiffs, in fact, reside in the Northern District of Georgia. Nevertheless, Plaintiffs point out that the Southern District of Georgia regularly hears cases of national and statewide importance, and Defendants' alleged discriminatory actions affected Georgia homeowners statewide, including this District. Dkt. No. 34 at 4. Further, Plaintiffs hint that they chose this District in which to file their case due to the Northern District of Georgia's "congested docket." Id.

While Plaintiffs have legitimate reasons for choosing to file their lawsuit in this District, their choice is afforded little weight due to their not residing here. The Court concludes Plaintiffs would not be inconvenienced by a transfer, and this factor weighs in favor of transfer to the Northern District of Georgia.

**C. Convenience of the Parties**

Defendants argue the Northern District of Georgia is more convenient for both parties because the parties reside there, Defendants' main offices are located there, and the named Defendants work there. Dkt. No. 20 at 3, Dkt. No. 39 at 4.

9

Plaintiffs argue that they "selected the forum," and the Southern District of Georgia "is therefore patently convenient for Plaintiffs." Dkt. No. 34 at 4. Plaintiffs state Defendants are "state agencies with statewide operations and statewide jurisdiction." Id. Plaintiffs point out that the State of Georgia, its many Atlanta-based state agencies, and the Georgia Attorney General's Office have previously filed suit in this District when seeking statewide relief. Id. at 5 (citing cases).

With regard to DCA, in particular, Plaintiffs contend "DCA maintains a permanent presence in this District through its satellite office in Waycross," and two of DCA's board members reside in this District. Id. Additionally, four of DCA's twelve regional representatives serve counties in this District. Id. Notably, DCA partnered with four HUD Counseling Agencies in this District to assist with applications for its Georgia Mortgage Assistance program. Id. Finally, DCA regularly hosts meetings and events, including board meetings, informational sessions, and housing symposiums, in this District. Id. at 5 & n.1.

Defendants have shown that the Northern District of Georgia would be a more convenient forum for them because their offices are there, as are the majority of their employees. While Plaintiffs' filing their lawsuit here shows that the Southern District of Georgia is *not inconvenient* for them, and possibly not inconvenient for Defendants, there is no doubt that transferring

this matter to the Northern District of Georgia would be more convenient for both parties because they reside there.

**D. Convenience of the Witnesses**

For purposes of the convenience-of-witnesses factor, "the focus of the Court's inquiry should be on 'key witnesses,' i.e., those whose knowledge and anticipated testimony is relevant not only to damages, but also to liability." Sarvint Techs., Inc. v. Omsignal, Inc., 161 F. Supp. 3d 1250, 1266 (N.D. Ga. 2015) (citing Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004); McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003)). "Specifically, the court must determine whether the witnesses have actual knowledge about the issues in the case, where they are located, and whether it will be more convenient for them if the action is in [Waycross] or [Atlanta]." Id. at 1267 n.9 (citing Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp., 508 F. Supp. 2d 1186, 1190 (S.D. Fla. 2007)).

Further, "[t]he true concern is not merely 'convenience' of the witnesses, but the likelihood that key witnesses will be able to testify at trial." Id. at 1267 (citing Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001)). "Courts accordingly give less weight to inconvenience to witnesses who are employed by a party, because the party can ensure their presence at trial." Id. (citing Mason, 146 F. Supp. 2d at 1361).

Defendants contend "non-party witnesses will likely be DCA and OPB employees who work out of the Atlanta main offices and likely live in the Atlanta area." Id. Specifically, Defendants argue that "for the 24 non-party witnesses listed in Plaintiffs initial disclosures, with the exception of one, Plaintiffs provided their contact address as being in Atlanta, at DCA or OPB's headquarters or the Governor's office." Dkt. No. 39 at 3-4.

Plaintiffs point out that listing "unknown and unnamed witnesses" does not establish that the Northern District is inconvenient to these witnesses. Dkt. No. 34 at 6 (citing Combs, 461 F. Supp. 3d at 1209 ("[V]ague statements about the convenience of . . . unnamed witnesses is insufficient [for venue transfer].")). Further, Plaintiffs argue that witnesses are dispersed across Georgia because the challenged program is statewide. Id. at 7.

Neither party identifies key witnesses by name, but it is clear that the majority of witnesses will be Defendants' employees. The Court is less concerned with inconveniencing these witnesses, because Defendants can ensure their presence at trial. Sarvint Techs., Inc., 161 F. Supp. 3d at 1267. Nevertheless, because the majority of key witnesses are located in the Northern District, and Plaintiffs have identified by name no key witnesses located within this District, this factor weighs in favor of transfer.

12

**E. Availability of Process to Compel Attendance of Witnesses**

Defendants argue that "because all non-party witnesses are likely to be DCA and OPB employees from the Atlanta offices and located in the Atlanta area, there is a very real question regarding whether unwilling witnesses can be compelled to give evidence in a trial held in Waycross, Georgia." Dkt. No. 20 at 4.

Plaintiffs argue this factor is neutral because witnesses throughout Georgia are equally subject to compulsion in either this District or the Northern District of Georgia. Dkt. No. 34 at 9 (citing Fed. R. Civ. P. 45(c) (providing, in relevant part, that a party or a party's officer who "resides, is employed, or regularly transacts business in person" within the state is subject to a state-wide subpoena)). Further, Plaintiffs indicate that witnesses will likely be Defendants' employees whose attendance at trial will not need to be compelled. Id.

Plaintiffs' assertion that this Court holds subpoena power over all witnesses throughout Georgia is unsupported. Nevertheless, Defendants have identified no unwilling witnesses and have failed to explain why they would be unable to ensure their employees' attendance at trial. Peavy v. Axelrod, No. 15-0069, 2017 WL 3444747, at *17 (S.D. Ala. June 27, 2017) ("[T]his factor weighs in favor of maintaining venue when there is no showing that witnesses would be unwilling to appear absent court

13

compulsion.")). Defendants have thus failed to meet their burden with regard to this factor.

### F. Location of Documents and Sources of Proof

Defendants argue that records relevant to Plaintiffs' claims will be housed in the Atlanta offices for DCA and OPB, in the Northern District of Georgia. Dkt. No. 20 at 3. Plaintiffs argue this factor is neutral due to electronic access and transmission capabilities. Dkt. No. 10 at 12. "Because most records and documents can be stored and transmitted electronically, their location is entitled to little weight." Combs, 461 F. Supp. 3d at 1210 (quotation marks and citation omitted). Defendants have failed to meet their burden to show this factor weighs in favor of venue transfer.

### G. Relative Means of the Parties

Defendants contend "[l]itigating this case in the Southern District will cost all of the parties, including government agencies, more money, which cannot possibly serve the public interest." Dkt. No. 39 at 4. Plaintiffs argue that this factor is relevant only with regard to *them*, because Defendants are state entities and have substantial budgets and legal resources. Dkt. No. 34 at 7, 8 (citing Coyoy v. United States, 526 F. Supp. 3d 30, 45-46 (D.N.J. 2021) (denying federal government's motion to transfer venue because "[t]he United States has virtually unlimited resources" and plaintiff's venue choice should not

14

lightly be disturbed); Buffalo Tchrs. Fed'n, Inc. v. Helsby, 426 F. Supp. 828, 829 (S.D.N.Y. 1976) (concluding threat of severe inconvenience is significantly less serious in the context of a suit against a state governmental entity or official)).

While proceeding in this District might be more costly than in the Northern District of Georgia, Defendants have failed to show that they have insufficient financial means to litigate this matter in the Southern District of Georgia. Defendants have therefore failed to meet their burden to show this factor weighs in favor of transfer.

### H. Forum's Familiarity with the Governing Law

This Court and the Northern District of Georgia court are equally familiar with the law governing the claims in this case. This factor is neutral to transfer.

### I. Trial Efficiency and the Interests of Justice

"In evaluating trial efficiency and interests of justice, the Court looks at whether the case may be resolved more expeditiously in the alternative forum." Spanx, Inc. v. Times Three Clothier, LLC, No. 1:13-CV-710-WSD, 2013 WL 5636684, at *5 (N.D. Ga. Oct. 15, 2013).

Defendants argue "virtually all of the factors taken individually support transfer," so "[t]aken together, the case in favor of transfer is even stronger." Dkt. No. 20 at 5. Plaintiffs argue this factor is neutral because this District and the Northern

15

District of Georgia share an interest in adjudicating claims of racial discrimination affecting their residents.  Dkt. No. 34 at 9.

Plaintiffs are correct that both this District and the Northern District of Georgia have an equal interest in assessing claims of racial discrimination with regard to the administration of Georgia's public programs.  However, when considering the cost of obtaining witnesses and "all other practical problems that make trial of a case easy, expeditious and inexpensive," Moore v. McKibbon Bros., 41 F. Supp. 2d 1350, 1357 (N.D. Ga. 1998), this factor weighs in favor of venue transfer.

## CONCLUSION

"The purpose of a Section 1404(a) transfer is to promote litigation efficiency by preventing waste of time, energy, resources, and duplication and to deter one-ups-manship filings." Spanx, Inc., 2013 WL 5636684, at *5.  After considering all the relevant factors, the Court concludes the convenience factors weigh in favor of transferring this action to the Northern District of Georgia where the parties and key witnesses reside. Accordingly, the Clerk is **DIRECTED** to transfer this matter to the Northern District of Georgia, Atlanta Division.

**SO ORDERED,** this 19th day of November, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA